IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SVGMA, INC. | § | CASE NO: 04-21349 |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| FROST NATIONAL BANK | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-2132 |
| | § | |
| STANLEY V. GRAFF, *et al* | § | |
|     Defendant(s) | § | |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S AND THIRD PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

On this day came for consideration the Motions for Summary Judgment and Motions for Attorney's fees filed by Plaintiff and Third Party Defendant Frost National Bank ("FNB") and Third Party Defendants Gordon McNutt, The McNutt Group, Tarpon Harbor, Ltd., Blue Water Marina, LLC and David Conoly ("Third Party Defendants").  After considering the arguments of counsel, the summary judgment evidence, and reviewing the authorities, the Court finds that there are no genuine issues of material fact and the motions for summary judgments should be granted.

**I. Uncontroverted Facts**

On May 24, 2000, Walker Island Mooring Marina, Ltd. ("Walker Island") entered into a loan agreement with Frost National Bank ("FNB"). Under the loan agreement, FNB loaned Walker Island $1,910,000 and $650,000. Each loan was evidenced by a promissory note dated May 24, 2000 (the "Notes") which were secured by a Deed of Trust, Security Agreement, and Financing Statement. Walker Island defaulted on the Notes and filed for bankruptcy on February 2, 2004. On May 28, 2004, Mr. Stanley V. Graff ("Graff"), a limited partner in Walker Island, entered into an option agreement with FNB to purchase the Notes (the "First Option Agreement"). The First Option Agreement provided that Graff could exercise his option "upon payment of the purchase price in good funds to Frost prior to the expiration of the Option Period..." Graff never exercised the option under the First Option Agreement

Graff and FNB later entered into a second option agreement (the "Second Option Agreement") on July 2, 2004. Under the Second Option Agreement, Graff acquired "the exclusive option to acquire the Notes [and Collateral] for a period expiring noon, Fri. Sept. 3, 2004 (the 'Option Period") under the terms set forth herein." The terms included the express

provision that Graff pay the purchase price before the option expired. "Upon payment of the purchase price in good funds to Frost prior to the expiration of the Option Period, ...Frost shall assign and transfer the Notes [and Collateral] on a non-recourse basis to Graff or his designee." FNB agreed not to foreclose on this property from July 6, 2004 to September 3, 2004, during which time Graff could purchase the notes for "the total outstanding principal, plus accrued contractual and non-penalty interest together with outstanding attorney's fees, late fees, and other costs properly chargeable and then due under the Notes and any related documents," which as of June 1, 2004 was the sum of $2,487,770.97.

On September 3, 2004, Graff sent a letter to FNB indicating his intention to exercise the option, but did not tender any money to FNB. Graff argues that he did not tender the money because FNB did not promptly inform him of the amount then due under the terms of the agreement. Graff points only to the purchase price language quoted above for the creation of FNB's duty to inform him of the current amount due, not to any provision which expressly created FNB's duty. Graff requested the payoff amount on September 7, 2004 and received it on September 8, 2004. FNB set a firm deadline of noon on September 10, 2004, or the option would expire. Graff never exercised the option in the Second Option Agreement because he did not provide FNB "good funds" by September 10, 2004. On September 30, 2004, Graff advised FNB's representative that he was unable to secure financing until January or February of 2005, as a result of an inability to get insurance on the Marina Property due to Hurricanes then off the coast of the United States. FNB sold the notes and related liens to Tarpon Harbor on or about September 30, 2004. On October 1, 2004, Graff transferred a 25% interest in his option rights to SVGMA, Inc. ("SVGMA"), a corporation created for the purposes of acquiring the Marina Property. On October 4, 2004, SVGMA filed bankruptcy in an attempt to stop a foreclosure sale of the Marina Property, relying on its interest in the option agreement. Tarpon Harbor received notice of the Bankruptcy filing, but proceeded to foreclose on the Marina Property on October 5, 2004. The winning bidder was Blue Water Marina.

FNB filed a Declaratory Judgment adversary proceeding against SVGMA and Graff to determine that the option expired before FNB transferred its interest to Tarpon Harbor. Defendants [Graff and SVGMA] counter claimed as Third Party Plaintiff's alleging a number of causes of action, many of which were dropped. The remaining causes of action are a breach of contract claim against FNB and a conspiracy to violate the automatic stay against FNB, Gordon McNutt, The McNutt Group, Tarpon Harbor, Ltd. Blue Water Marine, LLC., and David Conoly.

FNB and the Third Party Defendants moved for dismissal pursuant to Rule 12(b)(6), Fed. R.Civ.Pro. On May 10, 2005, this Court entered an order delaying all findings until discovery was completed, noting that the nature of the claims and cross-claims in this adversary proceeding would be better resolved as motions for summary judgment. Accordingly, all parties were given an opportunity to complete discovery and to present their motions for summary judgment.

## II. Standard of Review

Summary Judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), F.R. Civ. P. ; *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 559 (5th Cir. 1997). To support a

motion for summary judgment, the moving party has the burden of establishing the absence of a genuine issue as to any material fact. Moreover, all facts in controversy will be construed in a light most favorable to the non-moving party. *Id.* A dispute as to a material fact is "genuine" under Rule 56(c) only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to preclude summary judgment. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999), *cert. denied,* 120 S.Ct. 249 (1999). Summary judgment is also appropriate when the only issues to be decided in the case are issues of law, or when the non-moving party's claims are legally deficient. *Neff. v. American Dairy Queen Corp* ., 58 F.3d 1063, 1065 (5th Cir. 1995), *cert. denied* , 116 S.Ct. 704 (1996).; *Hang On, Inc. v. City of Arlington* , 65 F.3d 1248, 1257 (5th Cir. 1995).

### III.  Breach of Contract Claims

The first question before the Court is when the Option agreement expired. Graff and SVGMA maintain that FNB's failure to provide the exact dollar amount due on September 3, 2004, puts FNB in breach. Graff and SVGMA further argue that after realizing that breach, FNB extended the time to close, and Graff would then have a "reasonable period of time" to finance the purchase. Reasonableness, they argue, is a fact question strictly in the realm of a jury. Established case law in Texas is to the contrary of that proposition. To be effective, the exercise of an option must be positive and unequivocal, and in strict compliance with the terms of the agreement. *Braugh v. Enyart* , 658 S.W.2d 221 (Tex. App. --Corpus Christi 1983, writ ref'd n.r.e.). In *Braugh* , an ex-husband attempted to exercise an option to purchase horses from his ex-wife. On the day the option expired he sent written notice that he would exercise the option, just as Graff did. He claimed he did not tender payment because of an uncertainty as to various fees which would be added to the cost of the horses under the option agreement, just as Graff did. The appellate Court declared that his option expired for failure to tender the payment. "The fact that appellant did not know the amount of breeding fees is of no consequence. The important element was the value of the horses which was well known to appellant. He should have tendered this amount in case to appellee on or before" the date the option expired. *Id.* 658 S.W.2d at 224.

The summary judgment evidence before the court presents no issues of material fact. The undisputed facts of the instant case are indistinguishable from those in *Braugh* . FNB's failure to provide an exact figure to Graff did not prevent Graff from tendering the amount he knew to be owed on the notes. Therefore the Court finds that FNB's failure to provide Graff with the precise amount is not a breach of contract. The Option Agreement expired by its terms on September 3, 2004 and any further time FNB granted Graff was without consideration. Therefore summary judgment is appropriate to deny Graff's breach of contract claims.

### IV.  Conspiracy Claims

Graff's rights under the option agreement expired on September 3, 2004, and therefore SVGMA received no interest in the Marina Property when Graff made the transfer. The Court need not reach the novel question of whether conspiring to violate the automatic stay is a tort. The option expired prior to the time it was assigned to SVGMA. There being no interest in the

Marina Property foreclosed on, the Court finds there was no automatic stay to conspire to violate.  Assuming *arguendo* that conspiring to violate the automatic stay is a cause of action, a party cannot conspire to violate a stay that does not exist.  Accordingly, Summary Judgment is appropriate on Graff and SVGMA's conspiracy claims.

## V. Attorney's Fees

FNB and Third Party Defendants seek attorney's fees pursuant to Texas Civil Practice and Remedies Code § 37.009 which states:  "In any proceeding under this chapter (Declaratory Judgment), the court may award costs and reasonable and necessary attorney's fees as are equitable and just."  Under Texas law, a determination of what fees are "reasonable and necessary" is for the fact finder, but what is "equitable and just" is a question of law for the Courts to decide.  *Ridge Oil Co. v. Guinn Investments, Inc.,*  148 S.W.3d 143, 161-62 (Tex. 2004).

The Fifth Circuit Court of Appeals recently upheld previous decisions not to apply § 37.009 in both federal question and diversity cases.  *Oleander v. Compass Bank,*  363 F.3d 560 (5th Cir. 2004); *Utica Lloyds v. Mitchel,*  138 F.3d 208(5th Cir. 1999); *Self Insurance Institute of America, Inc. v. Koroith,*  53 F.3d 694 (5th Cir. 1995).  "Although a party may recover fees in a federal declaratory judgment action where 'controlling substantive law' permits such recovery,...the Texas Declaratory Judgment Act is neither substantive nor controlling."  *Koroith*, at 697.  A party may not rely on the Texas Declaratory Judgment Act to authorize attorney's fees because the statute is not substantive law.  *Ultica*, at 210.  Though these cases were not Bankruptcy cases, the Court finds that the Fifth Circuit was clear on the applicability of §37.009 in Federal Courts.  The Court thus finds that the attorney's fees as requested by FNB and Third Party Defendants must be denied.

FNB pleads in the alternative for sanctions against SVGMA for Rule 9011 violations.  The Court finds no evidence that the pleadings were filed for any improper purpose, were not warranted by existing law, or lacked evidentiary support. See, Rule 9011(b), F.R.Bankr.Pro. The mere fact that the Court grants the summary judgment motions on file does not warrant sanctions.

## VI. Conclusion

The Court finds that there are no genuine issues of material fact and the Plaintiff and Third-Party Defendants are entitled to judgment in their favor as a matter of law.

It is therefore ORDERED that Plaintiff and Third Party Defendant Frost National Bank's Motion for Summary Judgment is hereby GRANTED.

It is further ORDERED that Third Party Defendants Gordon McNutt, The McNutt Group, Tarpon Harbor, Ltd., Blue Water Marina, LLC, and David Conoly's Motions for Summary Judgment are hereby GRANTED.

It is further ORDERED that FNB's and Third Party Defendant's Motion for Attorney's Fees are hereby DENIED.

SIGNED 09/16/2005.

*RICHARD S SCHMIDT*
United States Bankruptcy Judge

SIGNED 09/16/2005.

*RICHARD S SCHMIDT*
United States Bankruptcy Judge